THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LAVERN BESS<br>4806 Parkmont Lane<br>Upper Marlboro, MD 20772<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>THE DISTRICT OF COLUMBIA,<br>1350 Pennsylvania Avenue, NW<br>Washington, DC 20004<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:19-cv-3152 |

## AMENDED COMPLAINT

LaVern Bess ("Plaintiff" or "Ms. Bess"), by and through her attorneys Clark Law Group, PLLC, files this action, following the exhaustion of administrative remedies, and alleges as follows:

### NATURE OF ACTION

1. This is a challenge to the District of Columbia's ("Defendant" or "District") unlawful retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 and the D.C. Human Rights Act.

2. This is also a challenge to the District's failure to accommodate Plaintiff in violation of the Rehabilitation Act of 1973 ("Rehab Act").

### JURISDICTION AND VENUE

3. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

4. The United States District Court for the District of Columbia has subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

5. The Court may properly maintain personal jurisdiction over Defendant because Defendant is the government of the District of Columbia.

6. Venue is properly laid in the District of Columbia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

8. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII as follows:

    a. On April 29, 2019, Plaintiff filed a charge of retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC");

    b. On July 21, 2019, Plaintiff received her Right to Sue Letter from the EEOC;

    c. The instant action is timely because it was initiated within ninety (90) days of the receipt of the aforementioned Right to Sue Letter.

## PARTIES

9. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

10. Defendant is the governing body of the District of Columbia.

11. District of Columbia Department of Corrections ("DOC") is an executive agency and a department of the Defendant.

12. DOC is a *non sui juris* agency of the District of Columbia government.

13. DOC receives federal funds.

14. Defendant is an employer as defined by 42 U.S.C § 2000e.

15. Plaintiff is a resident of Maryland.

16. Plaintiff is an employee as defined by 42 U.S.C § 2000e.

## FACTUAL ALLEGATIONS

17. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

### Prior Litigation

18. Ms. Bess was a class member and active participant in *Neal v. Director, D.C. Dept. of Corrections*, No. 93-2420 (D.D.C. Jan. 5, 1994).

19. *Neal* involved claims of systematic sex discrimination within the DOC.

20. During the course of the case, Judge Royce C. Lamberth described the proceedings as "extraordinary" because the defendants "repeatedly committed acts of retaliation while the case was pending." *Neal v. Director, D.C. Dep't of Corrections*, No. 93-2420, 1995 WL 517248, at *2 (D.D.C. Aug. 9, 1995); *see also*, *Bonds v. Dist. of Columbia*, 93 F.3d 801, 804-805 (D.C. Cir. 1996).

21. Following a jury trial in favor of the class, which was then appealed, the *Neal* parties reached a settlement and entered a consent decree.

22. The *Neal* consent decree expired on February 4, 2004 and the Court dismissed the action from the docket on January 24, 2007.

## DOC Continued Pattern of Retaliation

23. Since the expiration of the *Neal* consent decree, Defendant has engaged in a systematic pattern of retaliation.

24. In 2002, corrections officer Ronald DuBerry was subjected to retaliation by the DOC after engaging in protected activity. *DuBerry v. D.C.*, 582 F. Supp. 2d 27, 37 (D.D.C. 2008) (denying summary judgment on retaliation claim).

25. In 2003, Lead Legal Instruments Examiner Edna McManus alleged that she was subjected to retaliation by the DOC after filing an EEOC charge. *McManus v. Williams*, No. CV 05-1621 (EGS), 2005 WL 8167530, at *1 (D.D.C. Dec. 23, 2005).

26. In 2006, corrections officer Charline Smith-Thompson alleged that she was subjected to retaliation by the DOC after complaining of sexual harassment. *Smith-Thompson v. D.C.*, 657 F. Supp. 2d 123, 135 (D.D.C. 2009).

27. In 2014, corrections officer Charnita Thomas was subjected to retaliation by the DOC in the form of threats of violence after submitting an EEOC charge. *Brokenborough v. D.C.*, 236 F. Supp. 3d 41, 59 (D.D.C. 2017) (denying summary judgment on retaliation claim).

28. In 2015, corrections officer Robert Murphy alleged that he was subjected to retaliation by the DOC because his wife had testified in a sexual harassment proceeding. *Murphy v. D.C.*, 390 F. Supp. 3d 59, 69 (D.D.C. 2019).

## Ms. Bess' Reemployment

29. By 1999, Plaintiff ceased her employment with the District.

30. In 2016, Plaintiff was employed by Correctional Corporation of America as a correctional officer.

31. Pursuant to her employment with Correctional Corporation of America, Plaintiff was placed to work at DOC locations.

32. In or around mid-2016, the District ceased its contract with Correctional Corporation of America and offered direct employment to the company employees providing services at Ms. Bess's work site.

33. The individuals who accepted the offer were Plaintiff, Dana Bushrod, Rochell Vaughan, Mahmoud Abdullah, and Sheila Palmer.

34. Ms. Bess accepted the District's offer of employment on or around November 22, 2016.

35. Before and around the time Plaintiff was hired, Ms. Bess advised Defendant's Human Resources personnel that she was a participant in the *Neal* case.

36. Within two months of beginning employment with the District, Dana Bushrod, Rochell Vaughan, Mahmoud Abdullah, and Sheila Palmer were given the rank of corporal and a pay increase.

37. Plaintiff was not given the rank of corporal or a pay increase despite having similar if not better qualifications than Dana Bushrod, Rochell Vaughan, Mahmoud Abdullah, and Sheila Palmer, none of whom were participants in the *Neal* case.

38. The District offers DOC correctional officers' overtime.

39. DOC allows individuals to sign up for overtime opportunities.

40. Overtime assignments are supposed to be allocated based on the order individuals sign up for overtime opportunities.

41. Defendant repeatedly has not assigned Plaintiff overtime throughout 2018 and 2019.

42. Instead, Defendant has assigned overtime to individuals who either signed up for overtime after Plaintiff or who did not sign up for overtime at all.

### After Submitting Her Charge, The Retaliation Worsens

43. On or around April 29, 2019, Plaintiff filed her EEOC Charge.

44. On information and belief, Defendant received notice of the Charge shortly thereafter.

45. Since filing her EEOC Charge, Ms. Bess has been assigned unfavorable posts.

46. Since filing her EEOC Charge, Ms. Bess has been offered overtime, but in most occasions in posts within the mental health unit where Ms. Bess does not have sufficient training to take the assignment.

47. On or around May 26, 2019, during roll call, Ms. Bess was accused of not answering her supervisor when she had stated her name loudly.

48. On or around May 26, 2019, Lt. Lancaster refused to accept from Ms. Bess a radio and chemical mace that she was required to return before ending her shift.

49. On or around June 9, 2019, Plaintiff was instructed to walk with Lt. Lancaster. Other officers were not asked to walk with her.

50. On or around June 11, 2019, Private Joseph Harris bumped Ms. Bess forcefully and aggressively.

51. Since in or around August 24, 2019, Ms. Bess has not been allowed access to the day shift overtime sign up book.

52. Instead, Ms. Bess was only given access to the night shift overtime sign up book.

53. In or around August 2019, Plaintiff was finally provided the rank of Corporal.

54. However, Plaintiff still receives less salary than Dana Bushrod, Rochell Vaughan, Mahmoud Abdullah, and Sheila Palmer.

55. On or around October 14, 2019, Corporal Brian Wharton refused to supply Ms. Bess with needed batteries for her required flashlight.

56. Plaintiff has repeatedly requested to participate in trainings offered by the DOC.

57. Plaintiff's requests were repeatedly denied.

58. Defendant instead granted the training requests of employees who were not in the *Neal* class or those who did not file EEOC charges.

59. For example, in or around early October 2019, Ms. Bess requested to participate in a four-day contraband search training.

60. Twenty-one individuals were selected for the training.  Ms. Bess was not selected.

61. Instead, Defendant offered Ms. Bess a thirty-minute lesson on her day off.

62. Since the filing of her EEOC Charge, Plaintiff has been subjected to increased scrutiny at her work, including being subjected to more unit inspections than her coworkers.

63. Plaintiff repeatedly complained to Defendant about the hostile work environment created by its officers, but Defendant did not take effective action to address the complaints.

**Defendant's Continued Retaliation After Filing of Lawsuit**

64. Plaintiff filed her initial Complaint in this Action on October 21, 2019.

65. On information and belief, Defendant and its management were notified of the Complaint shortly thereafter.

66. On October 23, 2019, Plaintiff was issued a letter of reprimand for supposedly failing to follow instructions and neglecting her duty.

67. However, Plaintiff was not working the day she supposed did not follow instructions or neglect her duty.

68. Since filing her Lawsuit, Defendant's management has repeatedly assigned to undesirable posts inconsistent with the posts Plaintiff won during Defendant's internal bidding process.

69. Under Defendant's policies and collective bargaining agreement, Defendant's management can only reassign employees from posts if the employee and union are given a specific reason for the change of assignment, which Defendant's management refused to provide.

70. On May 19, 2020, Ms. Bess requested a meeting with Defendant's management with union representation regarding their repeated reassignments of her posts without providing reasons for doing so.

71. When the requested meeting was held, Defendant provided Sgt. Franklin at the meeting claiming that he was her union representative.

72. However, Sgt. Franklin was not a union representative and not even a union member in good standing.

73. Defendant's misrepresentation to Plaintiff caused her distress and anxiety.

### Defendant's Failure to Accommodate

74. Ms. Bess suffers from diabetes.

75. Diabetes is medical condition that substantially impairs the production of glucose (blood sugar).

76. Diabetes is a disability under the Rehab Act.

77. On information and belief, individuals with diabetes are more likely to experience severe symptoms and complications when infected with the 2019 Novel Coronavirus ("COVID-19").

78. Plaintiff's supervisors are aware that Ms. Bess has diabetes.

79. On May 12, 2020, Ms. Bess submitted a request for accommodation to Defendant's Management Liaison Specialist Rosetta Taylor-Jones requesting that she be accommodated

by not being placed in locations which put her at risk of contracting COVID-19 due to her diabetes.

80. Ms. Bess submitted a note from her medical provider along with her accommodation request.

81. On May 15, 2020, Ms. Bess spoke with Defendant's Management Liaison Specialist Rosetta Taylor-Jones requesting that she be accommodated by not being placed in the Medical 82 Unit and Quarantine Units due to her diabetes.

82. The Medical 82 Unit and Quarantine Units house inmates who are or suspected of being infected with COVID-19.

83. There are many areas in Plaintiff's work location which do not specifically house individuals with or suspected to be infected with COVID-19.

84. Ms. Taylor-Jones claimed that Ms. Bess' request was granted and that she would instruct Plaintiff's supervisors to no longer assign Ms. Bess to the Medical 82 Unit or Quarantine Units.

85. Despite Ms. Taylor-Jones' representation, Ms. Bess was repeatedly assigned to Medical 82 Unit and Quarantine Units after May 15, 2020.

86. On June 1, 2020, Ms. Bess requested that Ms. Taylor-Jones confirm their conversation in writing that her accommodation request was granted and that she has instructed Plaintiff's supervisors to no longer place her on the Medical 82 Unit or the Quarantine Units.

87. After June 1, 2020, Plaintiff's supervisors continued to assign her to work Medical 82 Unit or the Quarantine Units.

88. As of the time of this filing, Taylor-Jones has not responded to Ms. Bess' request for written confirmation of her supposedly granted accommodation or that she has instructed Plaintiff's supervisors to cease placing Ms. Bess in the Medical 82 Unit or the Quarantine Units.

89. Defendant has not accommodated Ms. Bess' diabetes.

90. Several of Ms. Bess' coworkers have not been assigned to work in the Medical 82 Unit or the Quarantine Units.

91. On information and belief, these coworkers are not disabled and have not engaged in protected activity.

92. Plaintiff's supervisors have failed to accommodate Ms. Bess because she filed this Action.

93. Defendant failed to accommodate Ms. Bess because she filed this Action.

### COUNT I: FAILURE TO ASSIGN OVERTIME BECAUSE OF PROTECTED ACTIVITY

94. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

95. Defendant's policy is to assign officers overtime based on the order in which they volunteer.

96. Defendant has repeatedly not assigned Plaintiff overtime and instead assigned overtime to individuals who signed up later or did not sign up at all.

97. Defendant has repeatedly denied Plaintiff overtime because of her participation in the *Neal* case and her EEOC charge.

### COUNT II: SALARY DIFFERENTIAL BECAUSE OF PROTECTED ACTIVITY

98. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

99. Within about two months of hiring Plaintiff and her coworkers from Correctional Corporation of America, Defendant gave Dana Bushrod, Rochell Vaughan, Mahmoud Abdullah, and Sheila Palmer were the rank of corporal and a pay increase.

100. Plaintiff was not given the rank of corporal or a pay increase.

101. Defendant did not give Plaintiff the rank of corporal or increase her pay because of her participation in the *Neal* case.

## COUNT III: RETALIATORY HOSTILE WORK ENVIRONMENT

102. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

103. After filing her EEOC charge and after filing her Lawsuit, Plaintiff was subjected to a severe or pervasive hostile work environment that would dissuade a reasonable person from bringing an EEOC charge.

104. The hostile work environment included: not being permitted to return equipment, being bumped into by a male officer, not being provided access to the day shift overtime sign up book and being assigned unfavorable posts.

105. Plaintiff repeatedly complained to Defendant about the hostile work environment created by its officers, but Defendant did not take effective action to address the complaints.

106. Defendant has subjected Plaintiff to a hostile work environment because of her participation in the *Neal* case, her EEOC charge, and/or this Lawsuit.

## COUNT IV: FAILURE TO ACCOMMODATE

107. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

108. Plaintiff has a disability.

109. Defendant is aware of Plaintiff's disability.

110. On May 12, 2020, Plaintiff made an accommodation request for her disability.

111. On May 15, 2020, Defendant's representative claimed that Plaintiff's accommodation request would be granted.

112. However, despite this representation, Defendant has not accommodated Plaintiff.

113. Granting Plaintiff's accommodation request would not have been an undue hardship to Defendant.

114. Defendant's failure to accommodate Plaintiff was in violation of the Rehab Act.

## COUNT V: RETALIATORY FAILURE TO ACCOMMODATE

115. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

116. Plaintiff filed this Lawsuit on October 21, 2019, thereby engaging in protected activity.

117. On May 12, 2020, Plaintiff made an accommodation request for her disability.

118. To date, Defendant has not accommodated Plaintiff's accommodation request.

119. Defendant has not granted Plaintiff's accommodation request because she filed this Lawsuit.

120. Defendant's retaliatory failure to accommodate Plaintiff was in violation of Title VII and the D.C. Human Rights Act.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A. Entry of judgment in favor of Ms. Bess and against Defendant;

B. Back pay;

C. Compensatory damages;

D. Attorneys' fees and costs; and

E. Other such relief as may be appropriate to effectuate the purposes of Title VII, the Rehab Act, and the D.C. Human Rights Act.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: July 7, 2020

                                          Respectfully submitted,

                                          /s/ Jeremy Greenberg
                                          Jeremy Greenberg (1024226)
                                          Denise M. Clark (420480)
                                          Clark Law Group, PLLC
                                          1100 Connecticut Ave, N.W., Suite 920
                                          Washington, D.C. 20036
                                          (202) 293-0015
                                          jgreenberg@benefitcounsel.com
                                          dmclark@benefitcounsel.com